UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| JENIFER LILLY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 2:12-CV-364 |
| ) | (VARLAN/SHIRLEY) |
| RAB PERFORMANCE RECOVERIES, LLC, ) | |
| and BUFFALOE & ASSOCIATES, PLC, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION & ORDER**

This civil action is before the Court on the Motion for Summary Judgment on Behalf of RAB Performance Recoveries, LLC [Doc. 10], in which defendant RAB Performance Recoveries, LLC ("RAB") seeks dismissal of plaintiff's claims against it for failure to create a genuine issue of material fact. Plaintiff filed a response [Doc. 15], to which RAB replied [Doc. 18]. After carefully considering the arguments of the parties and the relevant law, the Court will grant in part and deny in part RAB's motion.

**I.  Background**

Plaintiff Jenifer Lilly commenced this action on August 22, 2012, asserting "violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA")" [Doc. 1 ¶ 2]. Plaintiff is alleged to have incurred a credit card debt, owing to Chase Bank [*Id*. ¶ 7]. Sometime prior to August 22, 2011, and after she defaulted on the debt, the debt was sold or transferred to defendant RAB [*Id*. ¶ 8].

On August 30, 2011, defendant Buffaloe & Associates, PLC ("Buffaloe") sent a collection letter to plaintiff in connection with this debt [*Id*. ¶¶ 11, 12]. According to plaintiff, the letter "prominently" displays the name of the firm as well as the names and email addresses of seven attorneys and states:

> This office represents RAB PERFORMANCE RECOVERIES, LLC and has been retained to collect the balance due on this account. At this time, no attorney with this firm has personally reviewed the particular circumstances of your account. However, if you fail to contact this office, our client may consider additional remedies to recover the balance due.
>
> . . . .
>
> In the event you are unable to pay this account in full at this time, please contact this office and a member of our staff will be happy to discuss the account with you. If you dispute any portion of this debt, please see the next paragraph regarding your rights.
>
> **Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within thirty (30) days of receiving this notice, this office will obtain verification of the debt or obtain a copy of the judgment against you (where appropriate), and we will mail you a copy of such verification or judgment. If you make a written request within thirty (30) days of receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

[Doc. 1-1 (emphasis omitted)]. It was also "auto signed" by "Buffaloe & Associates PLC" [Doc. 1 ¶ 17].

On or about October 5, 2011, Buffaloe filed a civil warrant and sworn affidavit in state court on behalf of RAB and served it on plaintiff in connection with collection of

2

the debt [*Id*. ¶¶ 37, 38]. The civil warrant stated that the amount due on the debt was for "the principal amount of $3,464.32, plus court cost in the amount of $114.50, and service of process fees in the amount of 25.00" [Doc. 1-2 (emphasis omitted)]. Likewise, the sworn affidavit, taken by RAB's Managing Member, Andrew Eichenbaum ("Eichenbaum") stated that plaintiff owed $3,464.32 as of August 15, 2011 [*Id.*].

In plaintiff's complaint, plaintiff alleges that RAB violated numerous provisions of the FDCPA in the following ways: 1) failing to make the requisite disclosures in the sworn affidavit attached to the civil warrant, in violation of 15 U.S.C. §§ 1692e(11) & 1692g(a)(3)-(5); 2) failing to obtain proper licensure in compliance with Tennessee law, in violation of 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10) and 1692f; and 3) under a theory of *respondeat superior* for the acts and omissions of Buffaloe as an agent for RAB who communicated with plaintiff within the scope of its agency relationship with RAB.

**II.     Standard of Review**

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d

3

937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the non-moving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Catrett*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**III.    Analysis**

Congress enacted the FDCPA in order "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The court is required to analyze alleged FDCPA violations "through the lens of the 'least sophisticated consumer.'" *Gionis v. Javitch, Block & Rathbone, LLP*, 238 F. App'x 24, 28 (6th Cir. 2007) (quoting *Smith v. Transworld Sys. Inc.*, 953 F.2d 1025, 1029 (6th Cir. 1992)). The least sophisticated consumer "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Colomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993). "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id*. at 1318 (internal quotation marks omitted). It also "protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Id*. at 1320.

   **A.    Failure to Make Required Disclosures in Sworn Affidavit**

RAB first moves for summary judgment on plaintiff's claims regarding the lack of disclosures and notifications in the sworn affidavit [Doc. 1-2], which plaintiff alleges violates 15 U.S.C. §§ 1692e(11) & 1692g(a)(3)-(5). RAB argues that the sworn affidavit is a formal pleading such that it is exempt from the disclosure requirements of the FDCPA. RAB also argues that it is not subject to any disclosure requirements because it

5

owned the debt in question and, thus, is not a "debt collector" for purposes of the FDCPA. Plaintiff contends that RAB is in a fact a debt collector because RAB frequently purchases defaulted debt from creditors and because RAB did not become the owner of the debt at issue in this case until it was already in default. Plaintiff also argues that the sworn affidavit does not fall within the formal pleading exception set forth in 15 U.S.C. § 1692e(11) because it is not a necessary component of the civil warrant to which the affidavit was attached.

### 1. RAB as "Debt Collector"

RAB argues that, "because it is undisputed that RAB is not a debt collector, as defined in 15 U.S.C. § 1692a(6)," it is entitled to summary judgment on plaintiff's claims regarding the sworn affidavit [Doc. 11 at 7]. That section states, in relevant part:

> [t]he term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts . . . . The term does not include--
>
> . . . .
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

6

15 U.S.C. § 1692a(6). Debt collectors are subject to all of the requirements of the FDCPA. Creditors, on the other hand, are not. A creditor, for purposes of the FDCPA, is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4).

In *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355 (6th Cir. 2012), the Sixth Circuit addressed the issue of whether a defendant who fit neither the technical definition of debtor or creditor was still subject to the FDCPA. In that case, the defendant was assigned an allegedly defaulted mortgage debt and immediately began making harassing phone calls to plaintiff, who filed an FDCPA action against the entity as well as its corporate parent. *Id.* at 357. In reversing the district court's dismissal of the defendant as falling outside the scope of the FDCPA's coverage, the Sixth Circuit held that the focus on the analysis of whether an entity is subject to the FDCPA is the status of the debt at the time the entity in question acquired it. *See id.* at 359 ("For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was collected."); *see also FTC v. Check Investors, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007) ("Congress has unambiguously directed our focus to the time the debt was acquired in determining whether one is acting as a creditor or debt collector under the

7

FDCPA."); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 535, 536 (7th Cir. 2003) (noting that "the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not"). More recently, in *Robinson v. Sherman Financial Group, LLC*, No. 2:12-CV-30, 2013 WL 1249567 (E.D. Tenn. Mar. 27, 2013), the Court held that an entity who owned the debt at issue but did not acquire it until after it was in default and subsequently attempted to collect on that debt was subject to the provisions of the FDCPA, *id.* at *5.

In this case, it is undisputed that RAB owns the debt in question. Plaintiff claims that "[a]fter default, the alleged debt was consigned, sold or otherwise transferred to [RAB] for collection from Plaintiff" [Doc. 1 ¶ 8], so that RAB did not acquire the debt nor attempt to collect on it until after plaintiff had defaulted. Plaintiff also alleges that RAB "is engaged in the business of purchasing defaulted consumer debts and attempting to collect them from consumers" [*Id.* ¶ 9]. From this, while RAB may not have been collecting a debt "owed or due another," it may still be considered a debt collector given its role as the owner of a debt that was in default when RAB received it, so that summary judgment is improper on this ground.

### 2. Sworn Affidavit as Part of Formal Pleading

The Court concludes, however, in light of the nature of the sworn affidavit attached to the civil warrant, that RAB was not required to make the necessary FDCPA disclosures in the sworn affidavit because it was part of a "formal pleading" exempt from

8

the requirements of 15 U.S.C. § 1692e(11) and 15 U.S.C. § 1692g.  Section 1692e(11) makes the following a violation of the FDCPA:

> [t]he failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, *except that this paragraph shall not apply to a formal pleading made in connection with a legal action.*

15 U.S.C. § 1692e(11) (emphasis added).  Similarly, § 1692g, which concerns other disclosures that must be made within five days of the initial communication, states that "communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a) of this section."  15 U.S.C. § 1692g(d).

RAB thus argues that the civil warrant and attached sworn affidavit fall under the "formal pleading" exceptions set forth in §§ 1692e(11) & 1692g(d).  This Court previously addressed this issue in addressing co-defendant Buffaloe's motion to dismiss [Docs. 8, 21], and reaches the same conclusion with regard to RAB, that the sworn affidavit falls within the formal pleading exception.  The civil warrant in this case serves the same purpose in a general sessions court case as the complaint does in other courts, as it is the manner in which an action is commenced in a general sessions court.  Tenn. Code Ann. § 16-15-716.  In addition, the sworn affidavit attached to the civil warrant serves as the means to conclusively establish the amount owed, such that it becomes a necessary part of the complaint.  *See* Tenn. Code Ann. § 24-5-107.  As has been previously stated,

9

"[a] complaint on a sworn account must be supported by an affidavit proving the existence and correctness of the account." *AMC Demolition Specialists, Inc. v. Bechtel Jacobs Co., LLC*, 3:04-CV-466, 2006 WL 2792401, at *10 (E.D. Tenn. Sept. 26, 2006) (dismissing claim on sworn account when complaint did not contain a sworn affidavit).

While plaintiff argues that the Court should construe the "formal pleading" exception narrowly, the cases plaintiff relies upon in support of her argument are inapposite to the facts of this case. In *Hauk v. LVNV Funding*, 749 F. Supp. 2d 358, 366-67 (D. Md. 2010), the court held that interrogatories served within the course of litigation are subject to the FDCPA, noting that "Congress did not intend for all documents filed in connection with a lawsuit to fall within the formal pleading exceptions," *id*. This case does not concern discovery matter but rather concerns a document filed with the complaint that normally must be filed when a sworn account is involved in order to avoid dismissal. Plaintiff also cites to *Nikkel v. Wakefield & Assocs., Inc.*, No. 10-CV-02411-PAB-CBS, 2011 WL 4479109 (D. Colo. Sept. 26, 2011), but that case involved a cover letter accompanying a courtesy copy of a complaint rather than a sworn affidavit served as a necessary attachment to a civil warrant. Thus, the Court concludes that plaintiff has not shown a genuine issue of material fact exists as to her claims brought under 15 U.S.C. §§ 1692e(11) & 1692g(a)(3)-(5).

**B.      Licensing Requirements**

RAB also moves for dismissal of plaintiff's claims regarding RAB's failure to obtain a license to be a debt collector under Tennessee law. RAB argues that it was not

10

Case 2:12-cv-00364-TAV-CCS   Document 22   Filed 08/05/13   Page 10 of 18   PageID #: 185

engaged in collection activity in this case because it hired Buffaloe, which is exempt from licensing requirements, to carry out its collection efforts on plaintiff's debt. RAB also asserts that there is no private cause of action created by Tenn. Code Ann. § 62-20-105, the statutory provision which establishes a licensing scheme for debt collection services. Plaintiff responds by arguing that this Court has already allowed FDCPA claims to proceed for an entity's failure to obtain the proper license, citing to *Smith v. LVNV Funding*, 894 F. Supp. 2d 1045 (E.D. Tenn. 2012).

The Tennessee Collection Service Act provides that "[n]o person shall commence, conduct or operate any collection service business in this state unless the person holds a valid collection service license issued by the board under [the Tennessee Collection Service Act] or prior state law." Tenn. Code Ann. § 62-20-105(a). The law provides an exception, however, for attorneys and those entities who are collecting solely on those debts incurred in the normal course of business. Tenn. Code Ann. § 62-20-103. A "collection service" is defined as follows:

> any person that engages in, or attempts to engage in, the collection of delinquent accounts, bills or other forms of indebtedness irrespective of whether the person engaging in or attempting to engage in collection activity has received the indebtedness by assignment or whether the indebtedness was purchased by the person engaging in, or attempting to engage in, the collection activity."

Tenn. Code Ann. § 62-20-102(3).

In *Smith*, this Court took up the plaintiff's objection to the magistrate judge's recommendation of dismissal as to plaintiff's claim that LVNV's failure to obtain a

11

license violated the FDCPA. 894 F. Supp. 2d at 1048. The Court concluded that, under 15 U.S.C. § 1692e(5), which prohibits the threatening of legal action that cannot be legally taken, "the threat to take (or the taking) of an action an entity could not legally take without being properly licensed may support a federal cause of action under the FDCPA." *Id.* at 1050.

In reaching its conclusion, the Court relied upon *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2012). In that case, the defendant had purchased the plaintiff's debt and begun collection attempts without properly registering in the state of Florida. The Eleventh Circuit held that the plaintiff in that case could state a claim against the defendant, focusing on two aspects in its analysis: 1) whether the language of the letter itself constituted a threat; and 2) whether the action threatened could legally be taken. 601 F.3d at 1193. As to the first question, the *LeBlanc* court remanded the case for determination by a jury. *Id.* As to the second question, however, the court concluded that, as a debt collector, if the defendant had not obtained the proper license prior to filing suit, then it would be threatening legal action that could not otherwise be taken. *Id.* at 1198. The *LeBlanc* court found that registration prior to engaging activities was "a reasonable condition precedent to filing a claim" for a defaulted debt so that threatening to take legal action without registration could be a FDCPA violation. *Id.* But see *Carlson v. First Revenue Assurance*, 359 F.3d 1015, 1018 (8th Cir. 2004) (holding that failure to obtain license, even if required, would not constitute violation of FDCPA because the violation did not constitute a false and misleading representation); *Wade v.*

12

*Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996) (holding that collection efforts, while possibly violating state law, were not "threat[s] to take action that could not legally be taken in violation of Section 1692e(5)"). In approving the reasoning set forth in *LeBlanc*, the Court in *Smith* applied *LeBlanc*'s two-prong analysis and concluded that the plaintiff had stated a claim where the defendant was not licensed under state law but threatened and took legal action which it was not authorized to do. 894 F. Supp. 2d at 1050; *see also Robinson*, 2013 WL 1249567, at *11 (citing to *Smith* and holding that collection service which threatened and subsequently filed suit without obtaining collection service license could be liable under various provisions of § 1692e).

From this legal background, the Court concludes that there is a genuine issue of material fact as to whether RAB violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(1), or 1692f. As to RAB's argument that it is not subject to the licensing requirement, the Court initially finds that RAB falls within the definition of "collection service" as set forth in the Tennessee statute. As previously discussed, RAB purchased the debt at issue in this case after it was in default, and plaintiff alleges that RAB is in the business of purchasing distressed or defaulted debt. RAB hired a law firm to send a letter of collection and, later, to file suit on RAB's behalf. As the statute instructs the Court to disregard the manner in which RAB obtained the debt, RAB was acting as a collection

13

service and taking steps to collect the debt, such that it was subject to Tennessee's debt collection service license requirement.[1]

In applying the test set forth by *LeBlanc* and utilized subsequently in *Smith* and *Robinson*, the Court finds that, similarly to the defendants in *Smith* and *Robinson*, RAB not only threatened to take legal action but did in fact take legal action when it filed the civil warrant against plaintiff, acting through its attorneys, co-defendant Buffaloe. *See Smith*, 894 F. Supp. 2d at 1050 ("[P]laintiffs state a cause of cause of action against [defendant] under § 1692e(5) on the basis that [defendant] was not licensed under the TCSA and not only threatened to take, but took legal action in the filing of its collection lawsuits, which it was not authorized to do under Tennessee law."); *Robinson*, 2013 WL 124957 at *11 (noting that "because Plaintiff has plausibly alleged [defendants] failed to obtain their collection service license, yet, collectively with other defendants, brought a lawsuit against Plaintiff to collect on a debt, [15 U.S.C. § 1692e(5)] has sufficiently been alleged"). Under the second prong of the *LeBlanc* analysis, the Court concludes that, without the proper state licensing, RAB may not have been legally able to engage Buffaloe to file a lawsuit on its behalf against plaintiff. While the Court notes that a party's failure to obtain a state license is not a *per se* violation of the FDCPA, a genuine

---

[1] Defendant argues that since it hired a law firm to collect the debt on its behalf, it is not subject to the licensing requirements of Tennessee law. This argument is without merit, since Buffaloe was acting on RAB's behalf when it filed the civil warrant in this action, as indicated by the fact that RAB is listed as the party to whom the debt is owed [*See* Doc. 1-2].

14

issue of material fact exists as to whether defendant violated the FDCPA's provisions by its failure to obtain a state license prior to bringing suit to recover against plaintiff.

### C. Vicarious Liability

Finally, RAB moves for summary judgment on plaintiff's claim that RAB is responsible for the acts and omissions of Buffaloe under a *respondeat superior* theory of liability. RAB argues that because it is not a debt collector there is no basis for vicarious liability. RAB also argues that Buffaloe was an independent contractor in relation to RAB, so that RAB cannot be held responsible for Buffaloe's actions. Plaintiff responds that Buffaloe was acting on behalf of RAB both in its collection letter and in the subsequent filing of a civil warrant, so that under the concepts of agency law, Buffaloe was acting as RAB's agent. Thus, plaintiff argues, RAB is responsible for any actions taken by Buffaloe during the course of the representation.

In *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103 (6th Cir. 1996), a company that had been assigned a car dealership's installment contracts hired an attorney to collect against individuals who had defaulted on their payments. During his collection efforts, the attorney violated the FDCPA, and the individuals later filed suit against the attorney as well as the company, who owned the debt. After determining that the defendant company did not meet the definition of "debt collector" under § 1692a, the Sixth Circuit refused to hold the company vicariously liable for the actions of its attorney, holding that it would not "accord with the intent of Congress . . . for a company that is *not* a debt collector to be held vicariously for a collection suit filing that violates the

15

[FDCPA] only because the filing attorney is a debt collector." *Id.* at 108. In reaching this holding, the court distinguished the case from *Fox v. Citicorp Credit Services*, 15 F.3d 1507 (9th Cir. 1994), a case where the Ninth Circuit held that a co-defendant was held vicariously liable for the actions of its attorneys because both could be classified as "debt collectors" for purposes of the FDCPA. *See Wadlington*, 76 F.3d at 108 (citing approvingly to *Fox* for the idea that if "[defendant] was a debt collector, it would appear to accord with the intent of Congress for [defendant] to be held directly liable to a consumer whom [defendant] sued in the wrong judicial district"); *see also Pollice v. Nat'l Tax Funding, LP*, 225 F.3d 379, 404-05 (3d Cir. 2000) (holding that entity "which itself meets the definition of 'debt collector'" could be held vicariously liable for other debt collector acting in agency capacity and noting that debt collectors "should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf").

In light of the holdings of *Wadlington* and *Fox*, various district courts have held debt collectors vicariously liable for their agents' FDCPA violations. *See, e.g., Suquilanda v. Cohen & Slamowitz, LLP*, 10 Civ. 5868, 2011 WL 4344044, at *4 (S.D.N.Y. Sept. 8, 2011) ("Courts have concluded that where the principal is a 'debt collector,' the principal may be liable for its agent's FDCPA violations."); *see also Edwards v. Velocity Inv.*, No. 1:10 CV 1798, 2011 WL 4007394, at *8 (N.D. Ohio Sept. 8, 2011) (noting that because defendant was a debt collector, it could be vicariously liable for actions of attorney debt collector in denying defendant's motion for summary judgment); *DeFazio v. Leading Edge Recovery Solutions*, No. 10-cv-02945, 2010 WL

16

5146765, at *3 (D.N.J. Dec. 13, 2010) (same); *Martsolf v. JBC Legal Grp., PC*, No. 04-CV-1346, 2008 WL 275719, at *10 (M.D. Pa. Jan. 30, 2008) (noting that "FDCPA liability levied upon an attorney debt collector may be equally imposed upon the attorney's debt collector client"). In so holding, courts have focused on the fact that "to find otherwise would result in companies shielding themselves from liability by hiring attorneys to avoid the requirements of the FDCPA." *Beach v. LVLN Funding*, No. 12-CV-778, 2013 WL 1878938, at *2 (E.D. Wis. May, 3, 2013); *see also Fox*, 15 F.3d at 1516 ("In order to give reasonable effect to section 1692j, we must conclude that Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken.").

As noted by the court in *Okyere v. Palisades Collection, LLC*, --- F. Supp. 2d ---, 2013 WL 1173992 (S.D.N.Y. 2013), "'traditional vicarious liability rules' ordinarily make principals liable for acts of their agents merely when the agents act 'in the scope of their authority,'" *id.* at *7 (quoting *Meyer v. Holley*, 537 U.S. 280, 285 (2003)). Further, "the nature of an attorney-client relationship itself reflects that the client has the power to 'control' its agent in material respects if the client wishes to do so." *Id. But see Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 259 (S.D.N.Y. 2011) (quoting *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006) ("Under general principles of agency—which form the basis of vicarious liability under the FDCPA—to be liable for the actions of another, the 'principal' must exercise control over the conduct or activities of the 'agent.'") (citation omitted)).

17

In this case, it is undisputed that RAB hired co-defendant Buffaloe to carry out debt collection efforts against plaintiff. As previously discussed, Buffaloe acted on RAB's behalf in sending the August 22, 2011 collection letter. Buffaloe appears as plaintiff's attorney in the civil warrant filed in Anderson County General Sessions Court, with RAB acting as plaintiff and beneficiary of Buffaloe's efforts. RAB argues that Buffaloe was only acting as an independent contractor, but this overlooks the nature of the relationship between RAB, the client, and its attorneys, the Buffaloe law firm. Given that both RAB and Buffaloe are both "debt collectors," as discussed, *supra*, the Court concludes that plaintiff has created a genuine issue of material fact as to whether RAB can be liable for Buffaloe's FDCPA violations.

**IV.    Conclusion**

For the reasons stated herein, defendant RAB Recoveries, LLC's Motion for Summary Judgment [Doc. 10] is hereby **GRANTED in part** and **DENIED in part**.[2]

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] In light of the Court's findings that summary judgment is inappropriate as to several of plaintiff's claims against RAB, RAB's Motion to Enter Final Judgment of Summary Judgment [Doc. 13] is hereby **denied as moot**.